EARL AND BETTY CAPEHART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Capehart v. Commissioner
Docket No. 7970-76.
United States Tax Court
T.C. Memo 1978-409; 1978 Tax Ct. Memo LEXIS 103; 37 T.C.M. (CCH) 1704; T.C.M. (RIA) 78409; October 12, 1978, Filed Lloyd Taylor, for the petitioners. Alan Summers, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency of $ 558.48 in petitioners' Federal income taxes for the 1974 calendar taxable year. The two issues for determination are (1) whether petitioners are entitled to a dependency exemption for the son by a former marriage of petitioner Earl Capehart and (2) whether petitioner Betty Capehart in computing her sick-pay exclusion is subject to one or to two 30-day waiting periods. FINDINGS OF FACT Petitioners resided in Redwood City, California, at the time this petition was filed. Petitioners' Federal income tax return for the 1974 calendar year was filed with the appropriate office of the Internal Revenue Service. From January 1 of 1974, through the first two weeks of August of that year, excluding the last two weeks in July, petitioner Earl Capehart's son, Keith, lived with petitioners. For the remainder of the year and the last two weeks in July, Keith *105 lived with his mother, Mr. Capehart's former wife. While the son lived with his mother, Mr. Capehart paid the mother as child support $ 50 for the last half of July, and $ 100 a month from September 1, for the remainder of the year. Petitioner Betty Capehart, a pharmacist employed at the Sequoia Hospital District in Redwood City, was absent from her job from January 19, 1974, through April 21 of that year because of a back injury incurred in the latter part of 1973. On April 22, 1974, she returned to work part time until June 20 of 1974, when she left work for the remainder of 1974 because of the same back injury. From April 22, 1974, until June 20, 1974, when Mrs. Capehart worked part time for the hospital, she performed work similar to the work she performed when she was working full time. While working part time, her daily hours at work varied from two to eight. Of the 36 days Mrs. Capehart worked part time, she worked five hours or more on 28 of such days. During her entire period of absence from January 19 through April 21, 1974, Mrs. Capehart received payments from the hospital attributable to accrued sick pay and payments from the California State Disability Fund. *106 During the first 30 calendar days of her absence beginning June 20, 1974, she received vacation pay from the hospital in addition to the payments as sick pay from the hospital and payments from the California State Disability Fund. Had Mrs. Capehart worked full time during her two periods of absence, her weekly rate of pay would have been $ 245. OPINION Petitioners had custody of Mr. Capehart's son Keith for more than half of the 1974 calendar year. For the remainder of the year when Keith was in the custody of his mother, Mr. Capehart paid Keith's mother child support. During 1974, petitioner Betty Capehart from January 19 through April 21, 1974, and again from June 20, 1974, for the balance of the year was absent from work because of a back injury. In the interim between April 21 and June 19, 1974, she worked part time at her job, performing tasks similar to those she performed while working full time. The first issue is whether petitioner Earl Capehart is entitled to a dependency deduction for his son Keith. This question is answered by sec. 152. [1] Sec. 152(a)(1) defines "dependent" as including a son of the taxpayer "over half of whose support, for the calendar year *107 in which the taxable year of the taxpayer begins, was received from the taxpayer." Mr. Capehart qualifies under the general rule of sec. 152(e)(1) [2] for the personal exemption deduction for his son Keith. Mr. Capehart and his former wife were divorced prior to the taxable year in issue. Keith received over half of his support from his divorced parents. Mr. Capehart had custody of Keith for the greater portion of the calendar year. [3]
*108 The second issue is whether petitioner Betty Capehart in computing her sick pay exclusion under sec. 105(d) is subject to one or to two 30-day waiting periods. Sec. 105(d) provides that if the employee's sick pay is more than 75 percent of his "regular weekly pay," no exclusion from gross income is allowed for the first 30 days of absence. Petitioners accede that the 75 percent plateau has been exceeded. The question is whether Mrs. Capehart's period of absence from work ended during the interim between April 22 and June 19, 1974, when she returned to work part time. If not, she was not subject to a second 30-day waiting period when she left work on June 20, 1974, for the remainder of the year. The statute specifically grants to the Treasury authority to prescribe regulations governing the applicability of the exclusion under sec. 105(d). While not included within the specific grant of authority therein, the promulgation of regulations defining what shall constitute "absence from work" is equally appropriate. Sec. 1.105-4(a)(4), Income Tax Regs., states "absence from work shall commence the moment the employee first becomes absent from work and shall end the moment the *109 employee first returns to work." The meaning of "returns to work" is illustrated in sec. 1.105-4(a)(5), Income Tax Regs.: An employee is not absent from work when he performs any services for his employer at his usual place or places of employment, whether or not the services are the usual services performed by the employee… If an employee returns to his usual place or places of employment and performs any services for his employer, he has returned to work… (Emphasis added) Mrs. Capehart "returned to work" during the interim between April 22 and June 19, 1974. During that period she worked part time at the hospital, performing work similar to the work she performed when she was working full time. Moreover, on 28 of the 36 days she worked part time, she worked five hours or more. Mrs. Capehart is subject to a second 30-day waiting period for her absence from work beginning June 20, 1974. Sec. 105 (d). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. Sec. 152(e)(1) provides: (e) Support Test in Case of Child of Divorced Parents, Et Cetera.-- (1) General Rule.--If-- (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody). ↩
3. Respondent contends Mr. Capehart did not have custody of Keith for more than half of 1974, thus bringing into play sec. 152(e)(2). We disagree with the factual contention of respondent.↩